# 22-1969-cr

## United States Court of Appeals

*for the*

## Second Circuit

---

UNITED STATES OF AMERICA,

*Appellee,*

– v. –

BABAR KHAN,

*Defendant,*

KHATIJA KHAN,

*Defendant-Appellant.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE CONNECTICUT (NEW HAVEN) DISTRICT

## BRIEF FOR DEFENDANT-APPELLANT
### Pursuant to *Anders v. California*, 386 U.S. 738 (1967)

BOBBI C. STERNHEIM
LAW OFFICES OF BOBBI C. STERNHEIM
*Attorneys for Defendant-Appellant*
225 Broadway, Suite 715
New York, New York 10007
(212) 243-1100

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES…………………………………………………..…..ii

JURISDICTIONAL STATEMENT …………………………………………1

QUESTIONS PRESENTED……….……………………..………………..………1

PRELIMINARY STATEMENT……………………………………….………......1

STATEMENT OF FACTS……………………………………………………....2

    Stipulated Factual Background……………..……………….………..…..…….2

    The Plea Agreement ………………….…..……………….………..……......4

    The Guilty Plea  Hearing…..……………..…..……………………..……..5

    The Sentencing Hearing…. ……………………..…………………………10

SUMMARY OF ARGUMENT………………………………….………12

POSSIBLE ISSUES ON APPEAL ………………………………………13

    POINT I………………….……………………...……..………..…………...13

        WHETHER THERE IS ANY BASIS FOR APPELLATE REVIEW
        OF APPELLANT'S GUILTY PLEA

    POINT II………………….…..…………………………….……….14

        WHETHER THERE IS ANY BASIS FOR APPELLATE REVIEW
        OF APPELLANT'S SENTENCE

CONCLUSION……………….……………………….………………19

CERTIFICATE OF COMPLIANCE……………………………..…………  20

i

# TABLE OF AUTHORITIES

**Cases** **Page**

*Anders v. California,* 386 U.S. 738 (1967) ............................................................19

*Gall v. United States,* 552 U.S. 38 (2007) ......................................................15, 16

*United States v. Booker,* 543 U.S. 220 (2005) ..................................................... 15

*United States v. Cavera*, 550 F.3d 180 (2d Cir. 2008) ...........................................17

*United States v. Crosby,* 397 F.3d 103 (2d Cir. 2005) ...........................................16

*United States v. Fernandez,* 443 F.3d 19 (2d Cir. 2006) ..................................16, 17

*United States v. Fleming,* 397 F.3d 95 (2d Cir. 2005) ...........................................16

*United States v. Selioutsky,* 409 F.3d 114 (2d Cir. 2005) .....................................16

**Statutes**

18 U.S.C. § 1341……………………………………………………………..1

18 U.S.C. § 1349……………………………………………………………..1

18 U.S.C. § 3231……………………………………………………………..1

18 U.S.C. § 3553(a) ………………………………………………………18

18 U.S.C. § 3742(a) ………………………………………………….…...18

26 U.S.C. § 7206……………………………………………………………..1

28 U.S.C. § 1291……………………………………………………….……..1

## JURISDICTIONAL STATEMENT

This is an appeal from a judgment entered in the United States District Court for the District of Connecticut on September 8, 2022 (Underhill, J.). Jurisdiction is in this Court pursuant to 28 U.S.C. §1291. Jurisdiction of this action was in the district court pursuant to 18 U.S.C. §3231.

## QUESTIONS PRESENTED

Whether there is any basis for appellate review of Appellant's guilty plea?

Whether there is any basis for appellate review of Appellant's sentence?

## PRELIMINARY STATEMENT

This is an appeal of a guilty plea and sentence from a judgment of conviction. Indictment 19-CR-314 (SRU) named two defendants, Khatija Khan ("Appellant") and her husband Babar Khan ("Babar") and charged four counts: Conspiracy to Commit Mail Fraud, in violation of 18 U.S.C. § 1349; Mail Fraud (Counts Two, Three and Four), in violation of 18 U.S.C. § 1341; and Making and Subscribing a False Tax Return, in violation 26 U.S.C. § 7206. (A-13 *et seq*.). Appellant was named in two counts only: Conspiracy to Commit Mail Fraud (Count One) and Mail Fraud (Count Two). *Id.*

On November 19, 2021, pursuant to the terms of a plea agreement (A-17), Appellant pleaded guilty to Counts One and Two of the indictment. (A-32 *et seq*.).

1

On September 1, 2022, the court imposed sentence. (A-76 *et seq.*). Timely notice of appeal was filed on September 8, 2022. (A-118). Appellant is scheduled to voluntarily surrender for commencement of sentence on February 13, 2023. (A-10, Dkt. 143).

## STATEMENT OF FACTS

### Stipulated Factual Background[1]

Since at least 2014, Appellant and her husband Babar (collectively "the Khans") were the directors of JLLAS CORP. and the co-owners of EIMAAN LLC. They used these two entities to recruit clients who sought immigration status, relief, or benefits in proceedings before United States Citizenship and Immigration Services ("USCIS"). The Khans told their clients that they could assist them. In particular, Appellant stated that she was an attorney with a background in immigration matters, even though she was not an attorney. In making this representation to her clients, she abused a position of trust in a manner that significantly facilitated the commission and concealment of the offense. To obtain fees from their clients,[2] the Khans filed petitions and applications with USCIS, even when these submissions lacked merit or a legitimate factual or legal basis.

---

[1] The offense conduct discussed herein is derived from the "Stipulation of Offense Conduct and Relevant Conduct" portion of the plea agreement (A-26-27). It is also contained in the Offense Conduct section at ¶¶ 9-24 of the presentence report ("PSR") (filed under seal). Neither party objected to the contents of the PSR. (A-78-79).

[2] Names of clients are listed in Appendix A annexed to the plea agreement. (A-28-29).

The Kahns prepared petitions and applications for clients that contained information which the Khans knew to be false. Without their clients' knowledge, the Khans also agreed to fabricate false documents to support some claims made to USCIS. Despite knowing that these documents contained false information, both Khans mailed, and caused to be mailed, these documents to USCIS, where these documents were received and made part of the official Alien file corresponding to each respective client.

Appellant would routinely misrepresent to clients the substance of the petitions and applications that she and Babar filed with USCIS, as well as the chances of approval by USCIS. Their clients were mainly undocumented persons from Latin American countries who resided in Connecticut and lacked legal immigration status. Most had limited education, a limited ability to communicate and comprehend English, and a minimal understanding of the petitions, applications, and documents that the Khans were filing (or claiming to file) on their behalf with USCIS. In certain cases, Appellant took clients' money without ever filing any petitions or applications for them. Appellant knew, or should have known, that these clients were vulnerable victims.

The Khans' clients worked primarily in low-wage hourly jobs but still paid the substantial fees demanded by the Khans for their purported assistance. The Khans took and kept their clients' money, even though the Khans did not achieve the results

that they had promised. In particular, Appellant demanded additional payment from some clients, even when she or Babar performed no additional work on the clients' behalf. Appellant knew that these financial losses constituted a substantial financial hardship to the clients.

After being arrested in late December 2019 for the instant case, Appellant continued committing relevant conduct in 2020 and 2021 by defrauding additional clients. With respect to Count Two, on or about September 4, 2015, Appellant knowingly caused to be delivered to USCIS by mail a fabricated employment verification letter in support of a client's Form I-821D regarding an application for the Consideration of Deferred Action for Childhood Arrivals ("DACA"), as part of the scheme to defraud charged in the indictment.

## The Plea Agreement

In addition to the stipulation regarding offense conduct and relevant conduct, the plea agreement specified the offenses, the penalties, the stipulated sentencing guidelines, waiver of rights, and acknowledgement of guilt and voluntariness of plea. (A-17 *et seq.).*

Based on an initial assessment, the parties agreed to the following:

A total offense level 28, assuming a Criminal History Category I, would result in a range of 78 to 97 months of imprisonment (sentencing table) and a fine range of $25,000 to $250,000, U.S.S.G. § 5El.2(c)(3). The defendant is also subject to a super-

vised release term of one year to three years. U.S.S.G. § 5D1.2.[3]

(A-21).

Regarding restitution, the plea agreement stipulated as follows:

Regardless of restitution that may be ordered by the Court noted above, the defendant agrees to make restitution at least in the amount of $326,212 to the to the victims identified in the Stipulation of Offense Conduct and Relevant Conduct and Appendix A to this plea agreement letter. The defendant, Khatija Khan, acknowledges that additional victims may come forward prior to sentencing due to her conduct, and if so, the Court may order her to make restitution to those additional victims. The defendant agrees to make such restitution in accordance with the schedule ordered by the Court.

(A-19).

The plea agreement contained a waiver of rights to challenge the conviction:

By pleading guilty, the defendant waives her right to appeal or collaterally attack her conviction in any proceeding, including but not limited to a motion under 28 U.S.C. § 2255 and/or § 2241.

(A-23).

## The Guilty Plea Hearing

On November 19, 2021, Appellant entered a plea of guilty under oath, pursuant to a plea agreement, to Counts One and Two of the Indictment: Conspiracy to Commit Mail Fraud and Mail Fraud. (A-32 *et seq*.). Prior to Appellant being sworn, the court advised Appellant her right to remain silent and her right to counsel at every stage of the proceedings (A-34-35). Appellant confirmed that the medication

---

[3] The PSR calculations mirrored those in the plea agreement. (PSR at ¶¶ 101-114).

she was taking did not interfere with clear thinking or make her drowsy. (A-36-37). She also confirmed that she had a chance to speak with counsel about change of plea and was satisfied with their representation; and defense counsel confirmed that she had no concerns about Appellant's competence. (A-37). Appellant confirmed she had read the indictment and discussed it with her lawyers and understood the nature of the charges (A-37-38).

The court explained potential maximum penalties upon convictions and Appellant confirmed her confirmed understanding. (A-38). The government confirmed that it had complied with obligations under *Brady.* (A-38-39).

The court reviewed various rights to which Appellant confirmed her understanding, including but not limited to: she was not required to plead guilty; the prosecution bore the burden to prove her guilt on both charges beyond a reasonable doubt; she was entitled to a speedy trial and presumed innocent; she had the right to confront witnesses, to object to evidence, to present evidence in her defense, to testify but was not required to testify. (A-39-42). Appellant further confirmed that she understood that she if she chose to remain silent and not testify, the court would instruct the jury that no inference or assumption of guilt could be made from her decision not to testify. (A-39-41). Court explained what rights Appellant would be giving up by pleading guilty and that at sentencing the court decided issues of fact why preponderance of evidence. Appellant confirmed that she understood all the

rights described by the court and understood that those rights would be waived by a guilty plea. (A-41-44).

Appellant confirmed her understanding that she could not withdraw her guilty plea and ask for trial if she was unhappy with the sentence imposed and could not appeal her convictions; that if she went to trial and was convicted, she could appeal both her conviction and sentence, but if she pleaded guilty, she could only appeal her sentence. (A-44-45). The court also explained that Appellant would be giving up important civil rights by pleading guilty. (A-45-47).

The court explained how sentencing procedure and the sentencing guidelines and Appellant confirmed her understanding. (A-47-51). Appellant confirmed that she discussed sentencing in general and the sentencing guidelines with her lawyers. (A-50-51). Appellant said she received advice or prediction about how she might be sentenced but understood that whatever her lawyers told her simply reflected their best professional judgment and would not be binding on the court. (A-51). Defense counsel confirmed that Appellant understood that whatever she was told about likely sentences was not binding on the court. (A-51).

The court reviewed the plea agreement and Appellant confirmed that she read the entire agreement, discussed it with her lawyers, and understood the contents of the agreement. (A-51-53). The government summarized the principal provisions of plea agreement. (A-54-60). Appellant also confirmed she understood everything the

prosecutor said when describing the plea agreement and that the description was an accurate summary of her understanding of the agreement. (A-60-61).

The court reviewed the guidelines enhancements, how the guidelines may be calculated, the base offense level, and the levels added for loss amount, substantial financial hardship to 25 or more victims, large number of vulnerable victims (30-31). The court reiterated the guideline range and maximum penalties stipulated in the plea agreement: offense level of 28, criminal history category I, guideline range of 78 to 97 months, a fine range of $25,000 to $250,000, a supervised release term of one to three years, a special assessment of $100 per court, and restitution in an amount no less than $326,212. (A-61-62). Appellant confirmed her understanding of the guidelines, agreed that the enhancements should apply, and confirmed that the court's guideline calculations might come out differently than as stated in the plea agreement and the court is not bound by calculations in the agreement. (A-61-62).

Appellant confirmed that she fully understood the Stipulation of Offense Conduct and Relevant Conduct ("Stipulation") contained in the plea agreement and that if she signed the agreement, she was agreeing that the factual statements in the Stipulation are true and accurate. Appellant confirmed that statements in the Stipulation are true and accurate. (A-62-63).

Appellant confirmed that the plea agreement was the entire agreement reached with government concerning her decision to plead guilty and that nobody made any

promises or representations not set force in the plea agreement. Appellant confirmed that no one tried to force or coerce her to sign plea agreement, that it was her decision to plead guilty, and that she decided to plead guilty because she committed the crimes charges in Counts One and Two of the indictment. Appellant then signed the plea agreement and stipulation in open court. (A-63-64).

The government summarized how it would prove each of the charges at trial; and Appellant confirmed that there was nothing that the government said when describing her conduct that she thought was inaccurate. (A-65-68). Regarding Count One, Appellant affirmed that there was a conspiracy from about May 2015 to January 2017 to commit mail fraud, that she agreed with at least one other person, knowingly and intentionally became a member of that conspiracy. Regarding Count Two, Appellant affirmed that there was a scheme or plan to obtain money and property by false pretenses, that she knowingly and willfully participated in that plan, and that in furtherance of that plan the U.S. mail or private carriers were used to send documents. (A-68). Appellant waived reading of the counts and stated her plea was "guilty" regarding each count. (A-69).

Finding that Appellant was fully competent and capable of entering informed pleas, that she was aware of the nature of the charges and consequences of the pleas, that her pleas of guilty were knowing and voluntary, and supported by an independent basis in fact satisfying each of the essential elements of the offenses,

the court accepted Appellant's pleas to Counts One and Two one and adjudged Appellant guilty of those offenses. (A-69-70).

The court explained the role of the probation officer and the preparation and purpose of the presentence report, and she confirmed her understanding. (A-70-71). The court warned Appellant that whatever she told probation could be used against her and that she had right to counsel at every stage of case including interview with probation to which appellant confirmed her understanding. (A-71).

**The Sentencing Hearing**

On  September 1, 2022, the court sentenced Appellant to a term of imprisonment of 60 months (A-76 *et seq*.).

Defense counsel confirmed that she and Appellant reviewed the PSR and addenda and had no objections to the factual statements set forth therein. The court adopted the factual statements of the PSR as the findings of fact of the court and accepted Appellant's guilty plea. The court recited the maximum penalties as stated in plea agreement and PSR. Counsel confirmed that there were no objections to the PSR. (A-78-79).

The court stated that sentencing guidelines had been accurately calculated in PSR: enhancements yielding total offense level 28 and Criminal History Category I, resulted in  a sentencing guideline range of 78 to 97 months' imprisonment, a one-to-three-year term of supervised release, a fine of between $25,000 to $250,000,

restitution, and $200 in special assessments. (A-80-81). Counsel confirmed there were no objections to the calculation of the sentencing guidelines or the resulting sentencing guideline range. (A-81).

Two individuals made oral victim impact statements.(A-81-85). Defense counsel stated that Appellant agreed that the offense conduct was reprehensible; that the offenses caused great financial harm and emotional distress to the victims; that Appellants takes responsibility, apologizes, is deeply ashamed and remorseful for her actions. (A-86).

Defense counsel requested a downward variance and sentence significantly below the guidelines, specifying Appellant's personal trauma history and her role as mother and primary caregiver of two daughters, ages three and 13. (A-87-90). Defense counsel stated that Appellant had made an initial $20,000 restitution payment to clerk's office. (A-91). Appellant agreed to restitution of not less than $326,212 and requested a restitution hearing in light of additional victim claims. (A-91-92). Defense counsel requested an extended self-surrender period to allow Appellant to make arrangements for her children. (A-92).

Appellant made a statement in her own behalf apologizing for her misconduct. (A-93-97).

After consideration of factors set forth in 18 U.S.C. § 3553(a), the court imposed a sentence of 60 months on each count to run concurrently, a three-year

term of supervised release, waived a fine, and imposed a $200 special assessment (A-101-110; A-113 *et seq*.) The court stated that the final order of restitution would be in an amount to be determined after further hearing or agreement but not less than $326, 212.[4] (A-109). The court ordered a self-surrender date of December 14, 2022.[5] (A-111).

Timely notice of appeal was filed on September 8, 2022. (A-118).

## **SUMMARY OF ARGUMENT**

The record of this appeal does not present any non-frivolous issues that may appropriately be presented for resolution by this Court. The guilty plea was knowing and voluntary and complied with the Constitution and Rule 11 of the Federal Rules of Criminal Procedure. The sentencing proceeding complied with Rule 32 of the Federal Rules of Criminal Procedure. The sentence imposed was below the guideline range contemplated by the plea agreement and presentence report. The sentence was not in violation of law, was not the result of an incorrect calculation of the sentencing guidelines range, was not greater than the applicable sentencing range, and did not exceed the statutory maximum for the crime of conviction. In fact,

---

[4] A hearing on restitution commenced on January 11, 2023 and continued on January 31, 2023. In advance of the hearing, Appellant filed a motion for credits against restitution. (A-11, Dkt. 146). By order dated January 21, 2023, the court determined that Appellant bears the burden of proving her claim that she spent certain of the victims' funds on hiring legitimate immigration attorney(s). (A-12, Dkt 157). The court has not yet issued an order of restitution.

[5] Thereafter, the court extended the voluntary surrender date to February 13, 2023. (A-10, Dkt 143).

the sentence imposed represented a downward variance below the applicable guideline range.

## POSSIBLE ISSUES ON APPEAL

### Point I

### WHETHER THERE IS ANY BASIS FOR APPELLATE REVIEW OF APPELLANT'S GUILTY PLEA

Appellant's guilty plea was knowing and voluntary and entered in accordance with the requirements of the Constitution and Rule 11 of the Federal Rules of Criminal Procedure. The court thoroughly reviewed the plea agreement with Appellant. Appellant confirmed her understanding of the agreement and the rights she would be waiving by pleading guilty, including the right to appeal her conviction. Appellant understood the maximum penalties she faced by pleading guilty and the guideline enhancements applicable to the charges. She understood that restitution would be imposed in a sum no less than $326,212 and might be increased subject to additional victim claims. She admitted she was guilty of both charges for which she was indicted. She confirmed that her guilty pleas were not coerced.

Further, under the terms of the plea agreement, the guilty plea falls within the appeal-waiver provision and Appellant acknowledged during her plea proceeding that she could not challenge her conviction on appeal.

Accordingly, there is no basis for appellate review of Appellant's guilty plea.

**Point II**

**WHETHER THERE IS ANY BASIS FOR APPELLATE REVIEW
OF APPELLANT'S SENTENCE**

The offenses of conviction carried statutory penalties: a maximum penalty of 20 years on each count; a maximum term of three years of supervised release on each count; a maximum fine of $250,000 dollars; restitution no less than $326,212 and subject to increase based on additional witnesses; and a mandatory special assessment of $200. Appellant entered a guilty plea to Counts One and Two: mail fraud conspiracy and mail fraud. Both the plea agreement and the presentence report calculated a total offense level of 28 in Criminal History Category I, yielding a guideline range of 71 to 97 months.

As detailed in Point I (*supra* at 13), Appellant's guilty plea was knowing and voluntary and entered in accordance with the requirements of the Constitution and Rule 11 of the Federal Rules of Criminal Procedures.

Appellant did not contest or make any corrections to the presentence report and the court adopted the factual statements contained therein. As requested by defense counsel, the Court imposed a non-guideline sentence.

Appellant addressed the court in her own behalf. The court considered the sentencing factors in 18 U.S.C. § 3553 and imposed a sentence below the stipulated guideline range and did not impose a fine.

The court followed the sentencing procedures set out in *United States v. Booker*, 543 U.S. 220 (2005), considered the guideline range, the other factors in 18 U.S.C. § 3553 (a), arguments by counsel, and the personal statement by Appellant. The sentence imposed was below the guideline range stipulated in the plea agreement and calculated in the presentence report.

Sentences are reviewed on appeal for "reasonableness," which amounts to a review for abuse of discretion. Appellant' sentence of 60 months represents a variance outside and lower than the stipulated guidelines range. There is no basis to argue that the sentence imposed was legally defective, unreasonably long, or an abuse of discretion. Rather, it represents an exercise of discretion benefitting Appellant and no colorable sentencing issue can be raised on this appeal.

In *Booker*, the Supreme Court made the sentencing guidelines advisory, instructing the district courts to sentence based upon consideration of all the factors enumerated in 18 U.S.C. § 3553, one of which is the applicable guideline range. The Court also held that, on appeal, sentences would henceforth be reviewed for "reasonableness." 543 U.S. at 260-53. The Court has since expanded on the meaning of "reasonableness," emphasizing that "the appellate court must review the sentence under an abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 51 (2007).

This Court has stated that "'reasonableness' in the context of review of sentences is inherently a flexible concept. The appellate function in this context should exhibit restraint, not micromanagement. . . . Although the brevity or length of a sentence can exceed the bounds of reasonableness, we anticipate encountering such circumstances infrequently." *United States v. Fleming*, 397 F.3d 95, 100 (2d Cir. 2005). As reiterated in *Gall*, the Court held that the reasonableness standard is "akin to review of the abuse of discretion." *United States v. Fernandez*, 443 F.3d 19, 27 (2d Cir. 2006). "[I]n the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be reasonable in the particular circumstances." *Id*.

In addition to consideration of its length, a sentence may be unreasonable due to an error committed in the process of arriving at the sentence, for instance, if the guideline range is calculated incorrectly, the sentence is affected by procedural or legal error, or the court makes a clearly erroneous finding of fact. *See Fernandez*, 443 F.3d at 27; *United States v. Selioutsky*, 409 F.3d 114, 118 (2d Cir 2005); *United States v. Crosby*, 397 F.3d 103, 114-15 (2d Cir. 2005). Accordingly, "a sentence will satisfy the requirements of *Booker* and the Sixth Amendment if the sentencing judge (1) calculates the relevant Guidelines range, including any applicable departure under the Guidelines system; (2) considers the calculated Guidelines

range, along with the other §3553(a) factors; and (3) imposes a reasonable sentence." *Fernandez*, 443 F.3d at 26. Such was done here.

The plea agreement and presentence report correctly calculated Appellant's guideline range and Criminal History Category. Appellant received the benefit of a downward variance from the stipulated guideline range.

At sentencing, the court confirmed that Appellant had reviewed the presentence report and had no objections. The court granted defense counsel's request for a non-guideline sentence.

As noted above, sentences are now reviewed on appeal for 'reasonableness.' This Court has stated that in the "overwhelming majority of cases a Guideline sentence will fall comfortably within the broad range of sentences that would be reasonable in the particular circumstances." *Fernandez*, 43 F.3d at 27. On appeal, the Court will set aside a sentence as unreasonably long "only in exceptional cases where the trial court's decision cannot be located within the range of permissible decisions." *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (*en banc*) (internal quotations omitted.)

The is no colorable claim that Appellant's sentence was unreasonable. Appellant was sentenced according to an unchallenged guideline range, and there was no procedural or legal error in the sentencing methodology used by the district court.

A sentence is appealable only if it was imposed in violation of law, results from an improper calculation of the sentencing guideline range, is greater than the applicable sentencing range or statutory maximum or was unreasonable based on the facts and circumstances of the case. *See* 18 U.S.C. § 3742(a). Such is not the case here.

The district court conducted a sentencing hearing that complied with Rule 32 of the Federal Rules of Criminal Procedure. Without objection, the court adopted the factual content of the Presentence Report and the guideline calculations. Taking into consideration various § 3553(a) factors, the court imposed a 60-month sentence, well below the applicable guideline range. The court imposed a three-year term of supervised release, a mandatory $200 special assessment, and waived any fine. The final order of restitution has not yet been entered.

Appellant's sentence was not in violation of law, was not the result of an incorrect calculation of the sentencing guidelines range, was not greater than the applicable sentencing range, and did not exceed the statutory maximum for the crimes of conviction.

In sum, because no legal error occurred at the sentencing proceeding, because the sentence was not substantively unreasonable, and because the sentence imposed was below the applicable advisory guideline range, there is no non-frivolous sentencing issue for review by this Court.

## <u>CONCLUSION</u>

For the foregoing reasons, the record in this case presents no non-frivolous issues for consideration by this Court on appeal. Accordingly, counsel's motion pursuant to *Anders v. California,* 386 U.S. 738 (1967) should be granted.

Dated: February 6, 2023

Respectfully submitted,

*Bobbi C. Sternheim*

_____

BOBBI C. STERNHEIM, ESQ.
Attorney for Appellant
Law Offices of Bobbi C. Sternheim
225 Broadway – Suite 715
New York, NY 10007
212-243-1100

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Rule 32(a)(7)(C) of the Federal Rules of Appellate Procedure, undersigned counsel hereby certifies that this brief does comply with the type-volume limitation of Rule 32(a)(7)(B). As measured by the word-processing system used to prepare this brief, there are 4,136 words in this brief.

Dated: February 6, 2023

*Bobbi C. Sternheim*

_____

BOBBI C. STERNHEIM, ESQ.

.

| STATE OF NEW YORK | ) | | **AFFIDAVIT OF SERVICE** |
|---|---|---|---|
| | ) | ss.: | **BY OVERNIGHT EXPRESS** |
| COUNTY OF NEW YORK | ) | | **MAIL** |

      I, Tyrone Heath, 2179 Washington Avenue, Apt. 19, Bronx, New York 10457, being duly sworn, depose and say that deponent is not a party to the action, is over 18 years of age and resides at the address shown above or at

      **On February 6, 2023**

deponent served the within: **Brief for Defendant-Appellant Pursuant to Anders v. California, 386 U.S. 738 (1967)**

      **upon:**

Khatija Khan
*Defendant-Appellant*
1 Austin Circle
South Windsor, Connecticut 06074

the address(es) designated by said attorney(s) for that purpose by depositing **1** true copy(ies) of same, enclosed in a postpaid properly addressed wrapper in a Post Office Official Overnight Express Mail Depository, under the exclusive custody and care of the United States Postal Service, within the State of New York.

**Sworn to before me on February 6, 2023**

**MARIANA BRAYLOVSKIY**
Notary Public State of New York
No. 01BR6004935
Qualified in Richmond County
Commission Expires March 30, 2026       **Job# 318732**